**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Malkan, et al., | No. CV-20-00060-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Omni Hotels Management Corporation, | |
| Defendant. | |

In this diversity action, Plaintiffs Jeffery Malkan and Susan Malkan assert tort claims against Defendant Omni Hotels Management Corporation, based on its employees' treatment of and the subsequent removal of Plaintiffs from their hotel room by police. Pending before the Court is Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint for failure to state a claim (doc. 17). Plaintiffs filed a Response (doc. 19)[1], and Defendant filed a Reply (doc. 21). For the following reasons the Court will grant Defendant's Motion to Dismiss.

**I.   Background**

Plaintiffs' First Amended Complaint (FAC) alleges that Plaintiffs were guests at the

---

[1] Defendant requests that the Court strike Plaintiffs' Response because it is 23 pages and exceeds the 17-page limit set by the Local Rules. (Doc. 21, p. 2 n. 1). S*ee* LRCiv. 7.2(c), Rules of Practice and Procedure of the U.S. District Court for the District of Arizona. Plaintiffs did not seek leave of Court to exceed the page limit. Defendant omits the title page and certificate of service in its page count. Many of the additional pages are superfluous, including a table of contents, questions presented, preliminary statement and table, and summary of argument, none of which are required by the rules or necessary to resolution of Defendant's Motion to Dismiss. Defendant does not assert any prejudice resulting from the overly-long response. Although the Court does not condone Plaintiffs' noncompliance with the Rules, the Court will accept Plaintiffs' filing.

Omni Tucson National Resort (the Omni) on January 7, 8, and 9, 2020. (Doc. 8, ¶ 4.) Plaintiffs claim that on January 7, 2020 while they were in an outdoor whirlpool at the hotel, a man whom they believed was connected to the hotel in an official capacity, approached Plaintiffs and told them to lower their voices because his party guests could hear "every word" Plaintiffs were saying. (*Id.* at ¶¶ 9-11.) Feeling embarrassed, intimidated, and harassed by the incident, Ms. Malkan complained to the hotel's night manager Kara Boulten. (*Id.* at ¶¶ 11-12.) Ms. Boulten informed Plaintiffs that she had no control over the actions of the man who had approached Plaintiffs because he was an independent contractor event planner and not a hotel employee. (*Id.* at ¶ 12.) According to the FAC , Ms. Boulten also stated that "she would tolerate no further discussion of the matter." (*Id.*) Finding Ms. Boulten's response "unexpected and [] hostile," Ms. Malkan began to cry. (*Id.*) The FAC alleges that Ms. Boulten then "handed Ms. Malkan a box of tissues, but continued her abusive and sadistic tirade in defense of the event planner, and then said she refused to continue 'going around in circles' with a hotel guest, making hostile circular and pointing gestures with her hands." (*Id*. at ¶ 13.) At some point, Ms. Boulten was joined by the manager of the hotel restaurant who told Plaintiffs "he would not allow Ms. Boulten to be 'abused' by a hotel guest, sarcastically adding that 'I'm a big guy. If need someone to protect you, I'll come down to the pool and stand guard.'" (*Id*. at ¶ 14.)

The following day, January 9, 2020, upon learning that the Omni's general manager was not available, Plaintiffs met with Human Resources Manager Mark Estrada and Mr. Estrada's assistant to discuss Ms. Boulten's "hostility and belligerence" the previous day. (*Id*. at ¶ 15.) During the meeting, Ms. Malkan expressed that she was afraid to walk through the hotel lobby because of Ms. Boulten. (*Id.* at ¶ 19.) Ms. Malkan requested a "restraining order" against Ms. Boulten. (*Id*.) Mr. Estrada responded that "it was impossible for him to provide that because of Ms. Boulten's job duties," but he assured Ms. Malkan she would have no further interaction with Ms. Boulten for the remainder of Plaintiffs' stay. (*Id*.) The FAC further alleges that Mr. Estrada told Plaintiffs "he would find out what had happened and resolve their complaint that day." (Id. at ¶ 16.)

By the evening of January 9, Plaintiffs had not heard from Mr. Estrada. (*Id*. at ¶ 20.) When Plaintiffs inquired at the front desk why Mr. Estrada had not gotten back to them, Omni employee Grace Neely, "ran out from behind her work station to confront them in the lobby, gesturing and pointing in a way that frightened Ms. Malkan, who asked her to stop. Ms. Neely replied that she always talks with her hands. Ms. Malkan then asked her again to try not to do that, because it was scaring her." (*Id*. at ¶ 21.) At that point, Plaintiffs' room service order arrived at the front desk. (*Id.* at ¶ 22.) Plaintiffs accepted the order and proceeded across the lobby to their room when they encountered Ms. Boulten. (*Id.* at ¶¶ 22-23.) The FAC alleges that Ms. Boulten, "jumped out from the head of the stairs and shouted down at . . . [Plaintiffs'] backs that she had called the police to have them forcibly evicted." (*Id*. at ¶ 23.) During this exchange, Mr. Malkan said to Ms. Boulten: "'You're still here? . . . referring to Mr. Estrada's promise that they would see no more of her. 'You bet I am,' Ms. Boulten called back down at him." (*Id*. at ¶ 23.)

After Plaintiffs' encounter with Ms. Boulten, Plaintiffs returned to their room to eat their meal. (*Id*. at ¶ 25.) Plaintiffs allege that, minutes later, a police tactical response team "pound[ed]" on the door to Plaintiffs' hotel room. (*Id*. at ¶¶ 24, 25.) The officers informed Plaintiffs that "they were being removed from the premises." (*Id*. at ¶ 25.) Officers followed Plaintiffs' car from the premises. (*Id.* at ¶ 31.) Plaintiffs allege that their eviction occurred because Ms. Boulten "falsely reported a public safety emergency via a 911 call to the Tucson Police Department." (*Id.* at ¶ 2.)

On January 11, 2020, the Omni charged $744.38 to Mr. Malkan's credit card for the full stay for four nights, including the night Plaintiffs allege they had been harassed by the event planner, the night they were evicted, and the night after their eviction. (*Id*. at ¶ 32.)

The FAC alleges state-law claims of abuse of process, negligent security, negligent supervision, negligence per se, and intentional infliction of emotional distress. Plaintiffs seek compensatory damages in the amount of $2,500,000 in addition to punitive damages. (*Id.* at p. 14.)

Defendant seeks dismissal of the FAC for failure to state a claim. In their response, Plaintiffs concede that they fail to state a claim for abuse of process (Doc. 19, p. 24, n. 4), but otherwise oppose Defendant's motion to dismiss.

## II. Applicable Law

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations and internal quotation marks omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." *Id.* at 569. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing the sufficiency of the complaint, all well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party, *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018), and all reasonable inferences are to be drawn in favor of that party as well. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

## III. Discussion

### A. Plaintiffs fail to state a claim for intentional infliction of emotional distress

"Under Arizona law, a plaintiff alleging the intentional infliction of emotional distress must plead and prove that: (1) the defendant's actions were extreme and

outrageous, (2) the defendants either intended to cause emotional distress or acted in reckless disregard of that result, and (3) severe emotional distress in fact occurred." *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994) (citing *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580 (1987)). The plaintiff must show that the defendant's acts were, "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (Ct. App. 1995) (internal quotation marks and citation omitted). "Because 'severe emotional distress' is not readily capable of precise legal definition, Arizona courts apply a case-by-case analysis with respect to these determinations." *Larsgard v. Mendoza*, No. CV12-8013-PCT-DGC, 2012 WL 3704680, at *4 (D. Ariz. Aug. 28, 2012) (citing *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (Ariz.1986)). "'A line of demarcation should be drawn between conduct likely to cause mere emotional distress and that causing severe emotional distress.'" *Id.* (quoting *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 199, 650 P.2d 496, 501 (Ct. App.1982) (some internal quotation marks omitted).)

      Plaintiffs assert that "it was extreme and outrageous for Ms. Boulten, acting as an agent of the Omni, and under its authority, to stage a hoax that would summon the Tucson Police Department to a non-existent public safety emergency, which she knew would result in the intimidation, harassment, and forcible eviction of the Plaintiffs, who were peaceably occupying their hotel room in the late evening hours of January 9, 2020." (Doc. 8, ¶ 67.) Plaintiffs also assert that "Ms. Boulten exploited a known emotional vulnerability of Ms. Malkan through her abuse, bullying harassment, and ultimately through her unlawful eviction from the room she was peacefully occupying." (*Id.* at ¶ 69.) Plaintiffs further claim "it was inevitable that severe emotional distress would be inflicted, under these circumstances, on any reasonable person of the Plaintiffs' age, health, and social standing." (*Id.* at ¶ 70.)

      Viewing the FAC in the light most favorable to Plaintiffs and accepting Plaintiffs'

allegations as true, the Court concludes that the FAC fails to state a claim of intentional infliction of emotional distress. The Omni staff's alleged conduct prior to contacting police was not so outrageous in character and so extreme in degree to state a claim for intentional infliction of emotional distress. "It is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief." *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (citation omitted). Plaintiffs allege that Omni staff was rude, argumentative, and dismissive of the Plaintiffs' concerns, and used frightening hand gestures. "'[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.'" *Midas Muffler Shop,* 133 Ariz. at 198, 650 P.2d at 496 (quoting Restatement (Second) of Torts § 46 cmt. d (1965).) "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Nelson v. Phx. Resort Corp.*, 181 Ariz. 188, 199, 888 P.2d 1375, 1386 (Ct. App. 1994) (quoting *Ford*, 153 Ariz. at 43, 734 P.2d at 585). While the alleged conduct by Omni staff may have been abrasive or unpleasant to Plaintiffs, Plaintiffs have not shown that the verbal exchanges were sufficiently beyond "inconsiderate" or "unkind" so as to rise to the level of outrageousness necessary to state a claim. Similarly, the expressive hand gestures Plaintiffs attribute to Omni staff during their conversations, even if frightening, do not rise to the level of extreme or outrageous conduct sufficient to support a cause of action for intentional infliction of emotional distress.

The Court also concludes that Ms. Boulten's call to police resulting in Plaintiffs' eviction was not so outrageous or extreme as to be beyond all possible bounds of decency. The FAC does not include any facts in support of Plaintiffs' claim that Ms. Boulten

"stage[d] a hoax." The FAC does not include the allegedly false statement Ms. Boulten made to police. And, other than the conclusory statement that Ms. Boulten "reported a public safety emergency via a 911 call" (doc. 8, ¶ 2), the FAC provides no information about what police were told. A fair inference from the allegations of the FAC is that Omni staff requested Plaintiffs' removal from the property based on the conflict between Plaintiffs and Omni staff. The FAC alleges that by the time Ms. Boulten called police, Plaintiffs had been approached by the event planner about excessive noise on the premises, and Plaintiffs had several confrontations with hotel staff. *Cf. Bertuca v. Martinez,* No. 04-04-00926-CV, 2006 WL 397904, at *2 (Tex. App. Feb. 22, 2006) (when a hotel guest is "obnoxious for some reason" the hotel is entitled to have the guest "forcibly removed without resort to legal process, provided no more force is used than is necessary.")

In addition, even if Ms. Boulten did make a false report to police, that report would not support a claim of intentional infliction of emotional distress because a complaint to the police is absolutely privileged. "When statements are absolutely privileged, the speaker is immune from civil liability and courts do not inquire into the declarant's motives or whether the statements were made in good faith." *Ledvina v. Cerasani*, 213 Ariz. 569, 571, 146 P.3d 70, 72 (Ct. App. 2006). Arizona recognizes that a putative victim's complaint to law enforcement is entitled to absolute immunity in order to encourage "free and unfettered reporting to law enforcement authorities to assist the detection and prosecution of criminal activity."[2] *Id.* Application of absolute privilege to such statements also serves state constitutional goals of preventing intimidation, harassment, and abuse of victims. *Id.* at 574, 146 P.3d at 74. While *Ledvina* concerned a defamation claim, the court "did not limit the privilege only to defamatory torts and earlier cases have applied it more broadly." *Collins*, 2020 WL 3833012, at *3 (defendant's alleged false report to police was privileged resulting in immunity from negligence and intentional infliction of emotional distress

---

[2] Similarly, Arizona also recognizes a litigation privilege under which "[a] party or witness in a judicial proceeding holds an absolute privilege with respect to statements that relate to, bear on, or otherwise are connected to the proceeding." *Collins v. Gallego*, No. 2 CA-CV 2019-0083, 2020 WL 3833012, *3 (Ariz. Ct. App. July 8, 2020) (citing *Green Acres Tr. v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984)).

claims) (citing *Linder v. Brown & Herrick*, 189 Ariz. 398, 404-06, 943 P.2d 758, 764-66 (Ct. App. 1997) (applying litigation privilege to claims of intentional infliction of emotional distress and fraud.)).  Further, "the rationale for granting immunity in defamation actions—to avoid chilling complaints to law enforcement—applies equally to . . . negligence and IIED [intentional infliction of emotional distress] claims." *Collins*, 2020 WL 3833012, at *3 (internal quotation marks and citations omitted).  Here, Defendant Omni is entitled to the same privilege defense to which its employee is entitled. *See* Restatement (Second) of Agency, § 180 cmts. a, b (1958) (a principal is entitled to defenses arising out of a transaction between its agent and a third person, except for personal defenses[3] belonging to the agent.)

Finally, Plaintiffs' allegations of emotional distress in the form of Ms. Malkan's embarrassment and humiliation, feeling frightened, and crying which allegedly resulted from the entirety of staff's conduct, including Ms. Boulten's call to the police, are not "sufficiently severe to warrant the imposition of liability for intentional infliction of emotional distress." *Midas Muffler Shop*, 133 Ariz. at 199, 650 P.2d at 501 (crying and difficulty sleeping was not sufficient as a matter of law to sustain a claim for intentional infliction of emotional distress)*; see also Bodett v. Coxcom, Inc.,* 366 F.3d 736, 746 (9th Cir. 2004) (shock, stress, moodiness and estrangement from friends and coworkers is not severe); *Spratt v. N. Auto. Corp.,* 958 F.Supp. 456, 461 (D. Ariz. 1996) (crying, feeling stressed and upset, and having headaches is not enough to establish severe emotional distress)*; Larsgard,* 2012 WL 3704680, at *5 (humiliation, fear, "huge emotional stress" and trouble sleeping for nine months "do not constitute severe emotional distress"). Plaintiffs' intentional infliction of emotional distress claim fails for this additional reason.

**B.     Plaintiffs fail to state a claim for negligence per se**

To state a claim for negligence per se, Plaintiffs must plead a violation of a statute that was enacted for the protection and safety of the public. *Good v. City of Glendale*, 150

---

[3] The Restatement defines "personal defense" to include infancy, bankruptcy and set off.  *See* Restatement (Second) of Agency, § 180 cmt. b.

Ariz. 218, 221 (App. 1986). "A court may adopt a statute as the relevant standard of care if it first determines that the statute's purpose is in part to protect a class of persons that includes the plaintiff and the specific interest at issue from the type of harm that occurred and against the particular action that caused the harm." *Tellez v. Saban*, 188 Ariz. 165, 169, 933 P.2d 1233, 1237 (Ct. App. 1996) (citing Restatement (Second) of Torts § 286 cmt. d (1965)).

Plaintiffs assert a negligence per se claim based on Ms. Boulten's alleged violation of Arizona's false reporting statute, A.R.S. § 13-2907.01, which criminalizes knowingly making a false report to law enforcement agencies. Plaintiffs' claim fails because they do not establish the statute was enacted for the protection and safety of the public. Significantly, the statute prohibits false reports made "for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer," A.R.S. § 13-2907.01, and provides for reimbursement of costs to responding agencies incurred by the false report, A.R.S. § 13-2907(D).[4] This statute establishes a standard of conduct to benefit law enforcement agencies, not persons like Plaintiffs. *See In re J.U.*, 241 Ariz. 156, 161, 384 P.3d 839, 844 (Ct. App. 2016) (holding that police department "was a victim of the false reporting counts based on the plain language of § 13-2907(A)(1)" for purposes of restitution); *see also Lawson v. Snow,* 327 P.3d 340, 349-350 (Colo. Ct. App. 2014)

---

[4] A.R.S. § 13-2907.01(A) provides: "It is unlawful for a person to knowingly make to a law enforcement agency of either this state or a political subdivision of this state a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer." A.R.S. § 13-2907.01(A). A person commits the offense of false reporting by initiating or circulating a report of a bombing, fire, offense or other emergency knowing that such report is false and intending:

1. That it will cause action of any sort by an official or volunteer agency organized to deal with emergencies; or

2. That it will place a person in fear of imminent serious physical injury; or

3. That it will prevent or interrupt the occupation of any building, room, place of assembly, public place or means of transportation.

A.R.S. § 13-2907. A person who violates section 13-2907 is liable for the reasonable costs that are directly incurred by a public agency, for profit entity or not-for-profit entity that makes an appropriate emergency response to an incident or an investigation of the commission of false reporting. A.R.S. § 13-2907.01(B) & (D).

(rejecting negligence per se claim based on Colorado false reporting statute because, among other things, plaintiffs who were not law enforcement agencies were not within the class of persons the statute is intended to protect). As such, a violation of § 13-2907.01 cannot serve as a basis for Plaintiffs' negligence per se claim.

### C. Plaintiffs fail to state a claim for negligent supervision

Plaintiffs allege that Defendant was negligent in hiring, training and supervising its employees. (Doc. 8, ¶ 56.) "For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 208 Ariz. 124, 130, 91 P.3d 346, 352 (Ct. App. 2004) ("If the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee."); *see also Mulhern v. City of Scottsdale,* 165 Ariz. 395, 398, 799 P.2d 15, 18 (Ct. App. 1990) ("In order for the employer to be held liable for negligent hiring, retention, or supervision, the employee must have committed a tort."). Because Plaintiffs state no viable underlying tort liability on behalf of Defendant's employees, their claim for negligent supervision fails.

### D. Plaintiffs fail to state a claim for negligent security

Defendant asserts that "[n]o Arizona court has recognized the tort of negligent security." (Doc. 17, p. 9.) Rather than dispute Defendant's assertion, Plaintiffs rely on general theories of negligence and premises liability. (*See* Doc. 19, pp. 8-19.) In doing so, Plaintiffs must establish "actionable negligence, which requires proof of (1) a duty requiring the defendant to conform to a certain standard of care; (2) the defendant's breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *McMurtry v. Weatherford Hotel, Inc*., 231 Ariz. 244, 252, 293 P.3d 520, 528 (Ct. App. 2013) (citing *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007)). "Generally, a business owner 'is not [the] insurer of [guests'] safety and is not required at his peril to keep the premises absolutely safe.'" *Id.* (quoting *Burke v. Ariz. Biltmore Hotel, Inc.*, 12 Ariz. App. 69, 71, 467 P.2d 781, 783 (1970)). "However, 'a possessor of land []is under an affirmative duty[] to use reasonable care to make the

premises safe for use by invitees.'" *Id*. (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 355, 706 P.2d 364, 367 (1985)).

Because Plaintiffs were the Omni's business invitees, Defendant owed them a duty of reasonable care to make its premises safe for their use. *Id*. "The standard of reasonable care generally includes an obligation to discover and correct or warn of unreasonably dangerous conditions that the possessor of the premises should reasonably foresee might endanger an invitee." *McMurtry*, 231 Ariz. at 252-253, 293 P.3d at 528-29 (citations omitted). "A reasonably foreseeable event is one that might reasonably be expected to occur now and then, and would be recognized as not highly unlikely if it did suggest itself to the actor's mind." *Id.* at 253, 293 P.3d at 529 (internal quotation marks and citation omitted).

Plaintiffs allege that Defendant breached its duty to safeguard its guests from foreseeable hazards because its employee retaliated against Plaintiffs by making a false report to police resulting their eviction. (Doc. 8, ¶¶ 29, 44-47.) Plaintiffs further allege that their nighttime eviction exposed them to "foreseeably hazardous roadway conditions after a traumatic encounter with law enforcement as well as to extreme physical and emotional distress." (*Id.* at ¶ 47.) Even accepting that Defendant owes a duty to safeguard its guests from foreseeable hazards caused by employee misconduct, Plaintiffs fail to allege a cognizable breach of that duty. As discussed above, reports to law enforcement are afforded absolute immunity from negligence claims. *See Collins*, 2020 WL 3833012, at *3 (dismissing negligence claims arising from alleged false report to police because such report was a privileged communication). Additionally, Plaintiffs do not show a causal connection between the alleged breach and any injury to the extent that Plaintiffs' claims are based on any hazards encountered on the roadway. Plaintiffs also fail to sufficiently allege that they experienced severe emotional distress resulting from the eviction.

### IV.   Conclusion

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment

would be futile. *See Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). Here, there appears no basis to suggest Plaintiffs' causes of action could be pled in such a way to survive dismissal.[5]

Accordingly,

    IT IS ORDERED that Defendant's Motion to Dismiss (Doc. 17) is GRANTED.

    The Clerk of Court is directed to enter judgment accordingly and close the file in this action.

    Dated this 11th day of January, 2021.

*/s/ Jennifer Zipps*
Honorable Jennifer G. Zipps
United States District Judge

---

[5] Based on the allegations in the FAC that Plaintiffs suffered actual damages in the amount of approximately $744.00, the Court ordered Plaintiffs to show cause why this matter should not be dismissed for lack of subject matter jurisdiction regarding the amount in controversy. (Doc. 18.) For the following reasons, the Court determines that this action must be dismissed for the additional reason that subject matter jurisdiction is lacking.

  "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), *superseded by statute on other grounds*; *see also Crum v. Circus Circus Ent.*, 231 F.3d 1129, 1131 (9th Cir. 2000) ("To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.") (internal quotation marks and citation omitted). If the issue of jurisdiction requires the court to consider the merits of the case, the court has jurisdiction to proceed to the merits. *See Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983).

  Here, the issue of jurisdiction requires the Court to consider the merits of the case. Plaintiffs acknowledge that their ability to satisfy the amount in controversy requirement turns on the success of their claim for punitive damages. (Doc. 20, p. 3.) Plaintiffs' punitive damages claims are not viable.

  Punitive damages are warranted where the "defendant consciously pursued a course of conduct . . . involving some element of outrage similar to that usually found in crime." *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986) (internal quotation marks and citations omitted). The factual allegations in the FAC are legally insufficient to support such a finding. There are no facts which would allow a factfinder to conclude that the Defendant consciously pursued a course of conduct that involved an element of outrage similar to that usually found in a crime. As discussed in this order, Plaintiffs' allegations fail to state a claim for intentional infliction of emotional distress. Because the Court's jurisdiction is dependent on the viability of Plaintiffs' punitive damages claims, and because it is apparent to a legal certainty that Plaintiffs'' punitive damages claims are not viable, this Court must also dismiss this action for lack of subject matter jurisdiction.

- 12 -